JOHN SAPPINGTON, plaintiff in error, *v.* THOMAS PULLIAM, defendant in error.

*Error to St. Clair.*

The statute of Illinois makes promissory notes, bonds, &c.; assignable, though they contain no words of negotiability; and therefore, in a declaration by the payee or obligee, upon a bond or promissory note, payable to A B "or order," "or bearer," it is unnecessary to allege these words; and their omission would not constitute a variance between the declaration and proof. It is sufficient to declare upon a note or bond according to its legal effect.

THIS cause was tried in the Court below, at the September term, 1842, before the Hon. Sidney Breese, without a jury. Judgment was rendered for the defendant, and the plaintiff brought the cause to this Court by writ of error.

J. L. D. MORRISON, for the plaintiff in error, cited 1 Blackf. 41 ; Chit. on Bills 583, 588 ; 5 East. 476 ; R. L. 482 ; 1 Scam. 388, 451 ; 2 Scam. 302.

L. TRUMBULL, for the defendant in error.

SCATES, Justice, delivered the opinion of the Court:

John Sappington filed his declaration in *debt,* containing two counts, against Thomas Pulliam. In the first, he declared upon an obligation executed to him by the defendant for $83, for value received ; in the second, upon a promissory note, executed in like manner, for $63.25, for value received. Pleas, general issue, which were submitted to the Court. Upon the trial, the plaintiff

(1) R. L. 88; Gale's Stat. 68, § 14, 72, § 30.

offered in evidence a writing obligatory, and a promissory note; the former being made to "Dr. John Sappington, of Saline county, Mo., *or order;*" the latter, to the same, "*or bearer.*" To the introduction of these in evidence, the defendant objected, on the ground of variance, and the Court sustained the objection, and excluded them, to which the plaintiff excepted, and set them forth in his bill of exceptions, and assigns for error this opinion of the Court below.

By our statute, (1) these, together with many other instruments in writing, with and without seal, for the payment of money, or property, are made assignable, by endorsement in writing, so as to transfer the property and right of action to the assignee. At the common law, such contracts were not assignable, without words of negotiability; the policy of the law prohibiting the assignment of choses in action, apprehending that it would promote litigation, and enable the rich to oppress the poor, if they might buy men's rights of action or law suits. To the simple transactions of the uncommercial ages, in which these principles were laid down, they fully applied, and the reasoning was sound. With words of negotiability, the reasoning did not apply; and the reason failing, the law based upon it, itself ceased. For its negotiability was then put upon the express intention of the parties, as expressed in their contract. And the person, in whose favor the payee, or obligee gave the "order," or the "bearer," became entitled to demand payment, by the terms and express undertaking of the promissor, or obligor. When commerce began to extend, by the exchange of the various products of agriculture and industry, the necessities and luxuries of life increased; for its encouragement and convenience, contracts in relation to it were deemed and settled to be negotiable, without words of negotiability. Such were the distinctions in England between ordinary and commercial contracts; and well suited were these distinctions to the occupations and pursuits of a community, where almost every individual engaged alone in one occupation, and, in contracting, adopted that form of contract applicable to his pursuit. But, upon the discovery of new continents, the great increase of the precious metals, the increased variety and quantity of agricultural productions, and manufactures, seeking a market through the channels of commercial exchange, it became so extended as to embrace a great variety of transactions and persons not falling within the common law principle in relation to obligations and notes. The repeal of the laws of primogeniture, and the restraints upon the alienation of lands, their descent to, and partitionamongst all the children or heirs of decedents, their subjection to the payment of debts, either by sale under execution, or by executors and administrators, together with the enterprising, trading, and commercial character of the American people, have so

(1) R. L. 482; Gale's Stat. 525.

changed, identified, and assimilated all kinds of property, and all contracts to a commercial character with us, as to require that all contracts should be as negotiable as the property they concern. Land itself has almost become an article of commerce, by selling, bartering, exchanging, and mortgaging it in effecting, furthering, and securing commercial transactions. With this history of the mutations of things, and change in our circumstances before them, the legislature provided that all promissory notes, bonds, due-bills, and other instruments in writing for the payment of money or article of personal property, or sum of money in property, &c., shall be assignable by endorsement thereon in writing, under the hands of the payees. These contracts become negotiable by effect and operation of law, and the assignment transfers the interest in the same manner as bills of exchange; consequently, words of negotiability, since the statute, are surplusage, and are not a necessary or essential part of the description of the contract. It is sufficient, in pleading, to state the legal effect of the contract, and show a cause of action. (1) In this case, the names of the parties, the dates, sums, days of payment, and the promises to pay, are all set forth. This is sufficient, and more would be surplusage, unless the pleader attempted to give the tenor, when an exact copy would be required. It was held, on demurrer to a declaration, that the omission of the words " for value received," in a declaration purporting to set forth the legal effect of the contract, did not amount to a variance.

We believe that the legislature intended to put these contracts upon the same footing, as to their negotiability, and the manner of pleading, as bills of exchange. Mr. Chitty lays it down, and it is sound law, that the words " to order " may be omitted in the declaration. Chit. on Bills 583–8 ; and it is so ruled in 2 Shaw 8 ; Carth. 403 ; 5 East. 476. See also, 2 South. 43 ; 5 Greenl. 282. It is ruled otherwise in the case of Sebree *v.* Dorr, 5 Peter's Cond. R. 678, on a statute of Kentucky, very similar to ours. The Court says that there is a variance between the contract declared on, and the contract in proof, because the words " or order " were in the latter, and not so described. But we do not think a sound construction of the act will warrant the decision. This action was brought by an assignee, and distinction is taken. Where the payee is plaintiff, it is no variance for the omission of the words " or order," and so ruled in 10 Pick. 122.

We are, therefore, of opinion that the judgment of the Court below be reversed with costs, and the cause remanded for further proceedings.

*Judgment reversed.*

(1) 5 Saund. 707.